UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CRYSTAL ARBOUIN and LAURA LORENZO,

                                 Plaintiffs,

                    -against-

BOB'S DISCOUNT FURNITURE, LLC, BEN PATEL,
ANIL KAPOOR, MIKE MITLIORE, and RALPH
BRIGHAM,

                                Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

Case No.: _____

Plaintiffs Crystal Arbouin ("Ms. Arbouin") and Laura Lorenzo ("Ms. Lorenzo") (hereinafter, collectively, "Plaintiffs"), by their attorneys, Gerstman Schwartz, LLP, complaining of the Defendants Bob's Discount Furniture, LLC ("Bob's Furniture" or "Corporate Defendant"), Ben Patel ("Patel"), Anil Kapoor ("Kapoor"), Mike Mitliore ("Mitliore"), and Ralph Brigham ("Brigham") (hereinafter, collectively, "Individual Defendants") (Individual Defendants and Corporate Defendant may be referred to collectively as "Defendants"), set forth and allege as follows:

## JURISDICTION & VENUE

1.      This Court has original subject matter jurisdiction over the Title VII claims under 28 U.S.C. § 1331 and 1343 because they arise under the laws of the United States and are brought to recover damages for violations of civil rights.

2.      This Court has supplemental subject matter jurisdiction over the State and City claims under 28 U.S.C. § 1367 because they arise from a common nucleus of operative facts with

the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

3.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e-5(f)(3) because the Plaintiffs reside and can be found in this district.

## ADMINISTRATIVE PREREQUISITES

4.  The Plaintiffs have satisfied all administrative prerequisites to commencing this action.

5.  Ms. Arbouin timely filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 5, 2019.

6.  Ms. Lorenzo timely filed her charge of discrimination with the EEOC on August 5, 2019.

7.  The EEOC issued a right to sue letter for each Plaintiff dated January 31, 2020, which was received on February 4, 2020.

8.  Contemporaneously with the filing of this Complaint, Plaintiffs have served through Federal Express Overnight a copy of the same, along with a letter of explanation, to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

## PARTIES

A.  **The Plaintiffs**

9.  At all times relevant hereto, Plaintiff Crystal Arbouin is and was a female employee of Defendant Bob's Furniture holding the position of "salesperson."

10.     At all times relevant hereto, Plaintiff Arbouin is and was a resident of Calverton, New York.

11.     At all times relevant hereto, Plaintiff Laura Lorenzo is and was a female employee of Defendant Bob's Furniture holding the position of "salesperson."

12.     At all times relevant hereto, Plaintiff Lorenzo is and was a resident of Mastic Beach, New York.

**B.      The Defendants**

13.     At all times relevant hereto, Defendant Furniture is and was a foreign limited liability company organized and existing under and by virtue of the laws of the State of Massachusetts, with a principle place of business located in the Bronx, New York.

14.     At all times relevant hereto, Defendant Bob's Furniture was and is a foreign limited liability company duly authorized to do business, and at all times hereinafter mentioned, doing business in the State of New York.

15.     Bob's Furniture is an American furniture store with 121 stores in 18 states and is ranked 12th in sales among United States furniture stores according to *Furniture Today's* list of Top 100 Furniture Stores.

16.     Defendant Ben Patel is employed by Bob's Furniture and supervises the Plaintiffs; he has the power to hire, fire, set schedules, direct corporate policy, and make other employment decisions affecting Plaintiffs' terms and conditions of employment. He is also an "aider and abettor" under New York State and City Human Rights Law.

17.     Patel is personally involved in day-to-day employment decisions concerning Bob's Furniture.

18.      Defendant Anil Kapoor is employed by Bob's Furniture and supervises the Plaintiffs; he has the power to hire, fire, set schedules, direct corporate policy, and make other employment decisions affecting Plaintiffs' terms and conditions of employment. He is also an "aider and abettor" under New York State and City Human Rights Law.

19.      Kapoor is personally involved in day-to-day employment decisions concerning Bob's Furniture.

20.      Defendant Ralph Brigham is employed by Bob's Furniture and supervises the Plaintiffs; he has the power to hire, fire, set schedules, direct corporate policy, and make other employment decisions affecting Plaintiffs' terms and conditions of employment. He is also an "aider and abettor" under New York State and City Human Rights Law.

21.      Brigham is personally involved in day-to-day employment decisions concerning Bob's Furniture.

## FACTUAL ALLEGATIONS

### A.  Crystal Arbouin

22.      On or about October 16, 2018, Ms. Arbouin began working for Bob's Furniture.

23.      From the moment Ms. Arbouin started working, she displayed an exemplary performance.

24.      Shortly after she was hired, another salesperson, Brigham, began making wholly inappropriate sexual comments and insinuations directed toward her. These comments included, but were not limited to, descriptions of Mr. Brigham's genitals and descriptions of sexual acts he would like to perform on Ms. Arbouin. These comments were constant and continuous, making Ms. Arbouin uncomfortable and nervous around Brigham, and afraid to come to work.

25.       On one notable incident, Brigham told Ms. Arbouin that he wanted to "choke her during sex." Disturbed by these comments, Ms. Arbouin tried to avoid Brigham.

26.       In or about January of 2019, while Ms. Arbouin was completing billing tasks, Brigham stood behind her and physically grabbed her buttocks with both of his hands, stating "oh yeah." He then walked away as if nothing had happened.

27.       Thereafter, Ms. Arbouin took every measure to avoid going anywhere near Brigham in the hopes that he would leave her alone. Unfortunately, he did not.

28.       Brigham only became enraged and jealous, often harassing Ms. Arbouin about which male coworkers she spoke to and why. A mere sampling of this conduct is as follows:

a.   In one incident, Brigham yelled at Ms. Arbouin and told her to stay away from Vinny Sammarpino, a coworker, stating that she should stay with him instead.

b.   During a later shift, Brigham saw Ms. Arbouin speaking to Mr. Sammarpino again and yelled at them both to stop speaking to each other. When Ms. Arbouin told him it was none of his business, a verbal confrontation ensued.

c.   During one Sunday shift, Brigham approached Ms. Arbouin while she was on the sales floor and aggressively said, "You just going to fucking talk to Roger all day?"

d.   The following week, during a conversation, Mr. Sammarpino made a comment and Ms. Arbouin laughed. When Ms. Arbouin laughed, Brigham called her an "idiot" and "a kid." Brigham then said "what would you know about a career, you'll never have one." Ms. Arbouin told Brigham to stop talking to her, to which he responded by calling her a "ghetto queen," and telling her that he was almost done paying off his mortgage but she would never own a home.

29.     In retaliation for Ms. Arbouin's rejections, Brigham began making unjustified complaints about her to one of the supervisors, Mitliore, causing Mitliore to reprimand her without justification. Brigham was eavesdropping and when Ms. Arbouin walked away he told Mitliore, "I wouldn't fix any time card, if somebody is missing punches every week they would be in big trouble." Mitliore continued to maliciously feed management false information in an effort to get Ms. Arbouin fired.

30.     On February 3, 2019, Ms. Arbouin had finally had enough and brought the sexual harassment to her another manager, Kapoor's, attention. Management not only failed to respond to Ms. Arbouin's sexual harassment complaints, but wholly endorsed Brigham's egregious conduct. In fact, Upon information and belief, Kapoor began retaliating against Ms. Arbouin.

31.     For example, on March 5, 2019, Kapoor approved her vacation time but subsequently retracted his approval without justification. Ms. Arbouin was then placed on a three-month probation for no reason.

32.     Notably, Brigham is the top sales associate in the Farmingdale branch. Clearly, Defendants are more concerned with sales than the well-being of their staff.

33.     Consequently, Ms. Arbouin became increasingly more anxious about going to work. Indeed, Ms. Arbouin began to experience such extreme anxiety that she called the "work crisis" hotline on multiple occasions and several of her supervisors including Kapoor and Patel. Despite this, when Ms. Arbouin requested a leave of absence for mental health reasons stemming directly from Brigham's conduct, her request was declined in violation of the law.

34.        After her request was declined, Ms. Arbouin asked her supervisors to change her shift so that she would not have to work with Brigham. But Ms. Arbouin's supervisors refused her request and told her to stop complaining.

35.        Not only did management fail to take any action against Mr. Brigham for his egregious conduct, management actively hindered and Human Resources ("HR") investigation into the sexual harassment complaints filed against Mr. Brigham by Arbouin, Lorenzo and several other Bob's Furniture employees. Management withheld, obstructed and covered-up information relevant to the investigation.

36.        Despite Ms. Arbouin's repeated efforts to report and oppose the sexually harassing and otherwise hostile working environment created by Brigham, and the other Defendants, the Defendants and their agents did nothing to appropriately remedy the situation.

37.        Upon information and belief, no investigation has taken place by the Defendants. Indeed, to date, Ms. Arbouin is still required to work with Brigham who remains on staff with complete immunity, causing Ms. Arbouin to fear for her safety and wellbeing.

38.        Upon information and belief, no mechanism has been established to prevent such sexual harassment from happening again.

39.        Since reporting the sexual harassment as explained above, Ms. Arbouin has been subjected to an increasingly intolerable working environment.

**B.  Laura Lorenzo**

40.        On or about September 10, 2012, Ms. Lorenzo began working for Bob's Furniture. From the moment Ms. Lorenzo started working for Bob's Furniture, she displayed an exemplary performance.

41.     For nearly six years of Ms. Lorenzo's tenure at Bob's Furniture, she had no workplace issues until on or about March 2019, when Brigham began sexually harassing Ms. Lorenzo.

42.     In or about March 2019, without solicitation, Mr. Brigham began telling Ms. Lorenzo about how unhappy he was in his marriage and began making wholly inappropriate sexual comments toward her.

43.     These remarks included, but were not limited to, a description of Mr. Brigham's genitals and descriptions of the sexual acts he would like to perform on Ms. Lorenzo.

44.     Disturbed by these comments, Ms. Lorenzo brought these incidents to her manager, Kapoor's attention. Ms. Lorenzo also confronted Brigham and admonished him to never speak to her that way again.

45.     Ms. Lorenzo also complained to Gayle Mincy, a fellow coworker and Mr. Brigham's friend, about the incident. Upon information and belief, when Ms. Mincy spoke to Brigham, he did not deny the incident. In fact, Brigham told Ms. Mincy that he was "bullying" Ms. Lorenzo because she had confronted him.

46.     Not only did management fail to reprimand Mr. Brigham, but they failed to take any action whatsoever, even as Brigham's harassment of Ms. Lorenzo escalated. Indeed, in clear retaliation for her complaints, Brigham began screaming at Ms. Lorenzo frequently and would humiliate her in front of both colleagues and customers.

47.     Ms. Lorenzo's supervisors were so unresponsive to Brigham's harassment that Brigham even felt emboldened enough to scream at Ms. Lorenzo in front of *them*. This made Ms. Lorenzo increasingly more nervous and anxious about returning to work.

48.     On March 3, 2019, Brigham screamed at Ms. Lorenzo so loudly and aggressively that he had to be physically restrained by a coworker, John Ferguson, to stop Brigham from assaulting Ms. Lorenzo. Despite being present when this occurred, Kapoor failed to take any action during or after the incident.

49.     On or about May 5, 2019, Ms. Lorenzo made a written statement recounting the incident to Mitliore, however, Mitliore failed to take any action.

50.     Approximately one week later, Ms. Lorenzo contacted a union representative who promised to contact HR to investigate the incident. Upon information and belief, although the incident was reported to HR, HR failed to take appropriate action to remedy the situation and management actively hindered the HR investigation.

51.     Despite Ms. Lorenzo's repeated efforts to report and oppose the sexually harassing and otherwise hostile working environment created by Brigham, and the other Defendants, the Defendants and their agents did nothing to appropriately remedy the situation.

52.     Upon information and belief, no investigation has taken place by the Defendants. Indeed, to date, Ms. Lorenzo is still required to work with Brigham who remains on staff with complete immunity, causing Ms. Lorenzo to fear for her safety and wellbeing.

53.     Upon information and belief, no mechanism has been established to prevent such sexual harassment from happening again.

54.     Since reporting the sexual harassment as explained above, Ms. Lorenzo has been subjected to an increasingly intolerable working environment.

## FIRST CAUSE OF ACTION

### Title VII – Sexual Harassment

55.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

56.    The Defendants intentionally discriminated against the Plaintiffs by creating and maintaining a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

57.    The sexually hostile work environment created by the Defendants was severe, pervasive, and a part of a pattern or practice of harassment against the Plaintiffs.

58.    The hostile working environment altered the Plaintiffs' conditions of employment by creating an abusive, physically threatening, humiliating, and intolerable working environment.

59.    The Plaintiffs complained about the sexual harassment to which they were subjected. But the Defendants took no action to stop the sex-based, offensive, unwelcomed, unsolicited, and illegal behavior that was directed towards the Plaintiffs.

60.    Defendants had the power to hire, fire, and alter the terms and conditions of the Plaintiffs' employment.

61.    The Corporate Defendants, through and together with the Individual Defendants, participated in the conduct giving rise to the harassment and hostile work environment based on the Plaintiffs' sex that altered the terms and conditions of their employment.

62.    As a direct and proximate consequence of the Defendants' intentional, unlawful, and discriminatory treatment of the Plaintiffs, they have suffered and continue to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

63.    By reason of the sexual harassment perpetrated by the Defendants, the Plaintiffs are entitled to all damages available to them under Title VII.

## SECOND CAUSE OF ACTION

### New York State Human Rights Law – Sexual Harassment

64.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

65.    The Defendants intentionally discriminated against the Plaintiffs by creating and maintaining a sexually hostile work environment in violation of New York State Executive Law § 296 *et seq*.

66.    The sexually hostile work environment created by the Defendants was severe, pervasive, and a part of a pattern or practice of harassment against the Plaintiffs.

67.    The hostile working environment altered the Plaintiffs' conditions of employment by creating an abusive, physically threatening, humiliating, and intolerable working environment.

68.    The Plaintiffs complained about the sexual harassment to which they were subjected. But the Defendants took no action to stop the sex-based, offensive, unwelcomed, unsolicited, and illegal behavior that was directed towards the Plaintiffs.

69.    Defendants had the power to hire, fire, and alter the terms and conditions of the Plaintiffs' employment.

70.    The Corporate Defendants, through and together with the Individual Defendants, participated in the conduct giving rise to the harassment and hostile work environment based on the Plaintiffs' sex that altered the terms and conditions of their employment.

71.    The Individual Defendants aided, abetted, incited, compelled, and/or coerced a hostile work environment based on the Plaintiffs' sex by directly and purposefully participating in

conduct giving rise to or facilitating the unlawful harassment and hostile work environment prohibited under New York State Human Rights Law. *See* N.Y. Exec. Law § 290 *et seq.*

72.     The Individual Defendants aided, abetted, incited, compelled, and/or coerced a hostile work environment based on the Plaintiffs' sex by failing to promptly investigate or take appropriate remedial measures despite being informed about the existence of discriminatory conduct.

73.     Further, the Defendants condoned the acts of sexual harassment and hostile working environment detailed above in violation of New York State Human Rights Law. *See* N.Y. Exec. Law § 290 *et seq.*

74.     As a direct and proximate consequence of the Defendants' intentional, unlawful, and discriminatory treatment of the Plaintiffs, they have suffered and continue to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

75.     By reason of the sexual harassment perpetrated by the Defendants, the Plaintiffs are entitled to all damages available to them under New York State Human Rights Law.

### THIRD CAUSE OF ACTION

### New York City Human Rights Law – Sexual Harassment

76.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

77.     The Defendants intentionally discriminated against the Plaintiffs by creating and maintaining a sexually hostile work environment in violation of New York City Administrative Code § 8-107.

78.     The sexually hostile work environment created by the Defendants was severe, pervasive, and a part of a pattern or practice of harassment against the Plaintiffs.

79.     Plaintiffs were treated less well than other employees because of their sex.

80.     The hostile working environment altered the Plaintiffs' conditions of employment by creating an abusive, physically threatening, humiliating, and intolerable working environment.

81.     The Plaintiffs complained about the sexual harassment to which they were subjected. But the Defendants took no action to stop the sex-based, offensive, unwelcomed, unsolicited, and illegal behavior that was directed towards the Plaintiffs.

82.     Defendants had the power to hire, fire, and alter the terms and conditions of the Plaintiffs' employment.

83.     The Corporate Defendants, through and together with the Individual Defendants, participated in the conduct giving rise to the harassment and hostile work environment based on the Plaintiffs' sex that altered the terms and conditions of their employment.

84.     The Individual Defendants aided, abetted, incited, compelled, and/or coerced a hostile work environment based on the Plaintiffs' sex by directly and purposefully participating in conduct giving rise to or facilitating the unlawful harassment and hostile work environment prohibited under New York City Administrative Code § 8-107.

85.     The Individual Defendants aided, abetted, incited, compelled, and/or coerced a hostile work environment based on the Plaintiffs' sex by failing to promptly investigate or take appropriate remedial measures despite being informed about the existence of discriminatory conduct.

86.     Further, the Defendants condoned the acts of sexual harassment and hostile working environment detailed above in violation of New York City Administrative Code § 8-107.

87.     As a direct and proximate consequence of the Defendants' intentional, unlawful, and discriminatory treatment of the Plaintiffs, they have suffered and continue to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

88.     By reason of the sexual harassment perpetrated by the Defendants, the Plaintiffs are entitled to all damages available to them under New York City Human Rights Law.

## FOURTH CAUSE OF ACTION

### Title VII – Retaliation

89.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

90.     The Plaintiffs complained about the sexually hostile working environment to which they were subjected.

91.     The issues raised by the Plaintiffs to the Defendants constitute colorable violations of Title VII's prohibitions concerning discrimination on the basis of sex.

92.     The Defendants retaliated against the Plaintiffs for engaging in protected activities of reporting and opposing the sexually hostile working environment to which they were being subjected.

93.     In violation of Title VII, Defendants retaliated against the Plaintiffs in a way that interfered with their terms and conditions of employment.

94.     The Defendants' retaliatory and discriminatory act or acts would be reasonably likely to deter a person from engaging in protected activity.

95.     The Defendants had the power to hire, fire, and alter the terms and conditions of the Plaintiffs' employment.

96.     The Corporate Defendants, through and together with the Individual Defendants, participated in the conduct giving rise to the retaliation based on the Plaintiffs engaging in protected activity.

97.     As a direct and proximate consequence of the Defendants' intentional, unlawful, discriminatory, and retaliatory treatment of the Plaintiffs, they have suffered and continue to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

98.     By reason of the retaliation perpetrated by Defendants, the Plaintiffs are entitled to all damages available to them under Title VII.

### FIFTH CAUSE OF ACTION

**New York State Human Rights Law – Retaliation**

99.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

100.    The Plaintiffs complained about the sexually hostile working environment to which they were subjected.

101.    The issues raised by the Plaintiffs to the Defendants constitute colorable violations of New York State Human Rights Law's prohibitions concerning discrimination on the basis of sex.

102.    The Defendants retaliated against the Plaintiffs for engaging in protected activities of reporting and opposing the sexually hostile working environment to which they were being subjected.

103.    In violation of New York Executive Law § 296, Defendants retaliated against the Plaintiffs in a way that interfered with their terms and conditions of employment.

15

104.    The Defendants' retaliatory and discriminatory act or acts would be reasonably likely to deter a person from engaging in protected activity.

105.    The Defendants had the power to hire, fire, and alter the terms and conditions of the Plaintiffs' employment.

106.    The Corporate Defendants, through and together with the Individual Defendants, participated in the conduct giving rise to the retaliation based on the Plaintiffs engaging in protected activity.

107.    The Individual Defendants aided, abetted, incited, compelled, and/or coerced the retaliation based on the Plaintiffs engaging in protected activity by directly and purposefully participating in conduct giving rise to unlawful retaliation.

108.    The Individual Defendants aided, abetted, incited, compelled, and/or coerced the retaliation based on the Plaintiffs' complaints of the hostile work environment maintained by Defendants by failing to promptly investigate or take appropriate remedial measures despite being informed about the existence of the said conduct.

109.    Further, the Individual Defendants condoned the acts of sexual harassment, hostile working environment, and retaliation detailed above in violation of New York Executive Law § 296.

110.    As a direct and proximate consequence of the Defendants' intentional, unlawful, discriminatory, and retaliatory treatment of the Plaintiffs, they have suffered and continue to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

111.    By reason of the retaliation perpetrated by Defendants, the Plaintiffs are entitled to all damages available to them under New York State Human Rights Law.

## SIXTH CAUSE OF ACTION

### New York City Human Rights Law – Retaliation

112.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

113.     The Plaintiffs complained about the sexually hostile working environment to which they were subjected.

114.     The issues raised by the Plaintiffs to the Defendants constitute colorable violations of New York City Human Rights Law's prohibitions concerning discrimination on the basis of sex.

115.     The Defendants retaliated against the Plaintiffs for engaging in protected activities of reporting and opposing the sexually hostile working environment to which they were being subjected.

116.     In violation of New York City Administrative Code § 8-107, Defendants retaliated against the Plaintiffs in a way that interfered with their terms and conditions of employment.

117.     The Defendants' retaliatory and discriminatory act or acts would be reasonably likely to deter a person from engaging in protected activity.

118.     The Defendants had the power to hire, fire, and alter the terms and conditions of the Plaintiffs' employment.

119.     The Corporate Defendants, through and together with the Individual Defendants, participated in the conduct giving rise to the retaliation based on the Plaintiffs engaging in protected activity.

120.    The Individual Defendants aided, abetted, incited, compelled, and/or coerced the retaliation based on the Plaintiffs engaging in protected activity by directly and purposefully participating in conduct giving rise to unlawful retaliation.

121.    The Individual Defendants aided, abetted, incited, compelled, and/or coerced the retaliation based on the Plaintiffs' complaints of the hostile work environment maintained by Defendants by failing to promptly investigate or take appropriate remedial measures despite being informed about the existence of the said conduct.

122.    Further, the Individual Defendants condoned the acts of sexual harassment, hostile working environment, and retaliation detailed above in violation of New York City Human Rights Law.

123.    As a direct and proximate consequence of the Defendants' intentional, unlawful, discriminatory, and retaliatory treatment of the Plaintiffs, they have suffered and continue to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

124.    By reason of the retaliation perpetrated by Defendants, the Plaintiffs are entitled to all damages available to them under New York City Human Rights Law.

## SEVENTH CAUSE OF ACTION

### Negligent Hiring, Supervision, & Retention

125.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

126.    As a result of Defendants' gross negligence, the Plaintiffs experienced, *inter alia*, sexual harassment, retaliation, physical harm, anxiety, and emotional distress.

127.    These Defendants placed their employees in a position to cause foreseeable harm, harm that the Plaintiffs would have been spared had these Defendants taken reasonable care in making decisions concerning the hiring, supervision, and retention of Brigham.

128.    These Defendants knew, or should have known, of Brigham's propensity for the abovementioned conduct that caused the injuries of the Plaintiffs.

129.    These Defendants, as outlined above, hired Brigham either knowing of his criminal and sexually harassing history or under circumstances through which they should have known of the same.

130.    As a direct and proximate result of the aforementioned conduct, perpetrated by the Defendants, Plaintiffs were damages and suffered mental and emotional harm, anguish, anxiety, and humiliation.

131.    By reason of these Defendants' failure to exercise due care in the hiring, supervision, and retention of employees, Plaintiffs suffered sexual harassment and retaliation. Therefore, Plaintiffs are entitled to all damages permitted by law.

**EIGHTH CAUSE OF ACTION**

**Title VII – Wrongful Termination**

132.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

133.    Plaintiffs were constructively discharged based on their sex when they were subjected to the Defendants sexual harassment / hostile working environment and retaliation, despite the Defendants' knowledge about such unlawful behavior, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*

134.    The working conditions resulting from the Defendants' sexual harassment / hostile working environment and retaliation were so intolerable that a reasonable person in the respective employee's situation, such as the Plaintiffs, would have felt compelled to resign.

135.    As a direct and proximate consequence of the Defendants' intentional, unlawful, discriminatory, and retaliatory treatment, which led to the constructive discharge of the Plaintiffs, the Plaintiffs have suffered and continue to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

136.    By reason of the retaliation perpetrated by Defendants, the Plaintiffs are entitled to all damages available to them under Title VII.

## NINTH CAUSE OF ACTION

### New York State Human Rights Law – Constructive Discharge

137.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

138.    Plaintiffs were constructively discharged based on their sex when they were subjected to the Defendants sexual harassment / hostile working environment and retaliation, despite the Defendants' knowledge about such unlawful behavior, in violation of New York State Human Rights Law § 296 *et seq*.

139.    The working conditions resulting from the Defendants' sexual harassment / hostile working environment and retaliation were so intolerable that a reasonable person in the respective employee's situation, such as the Plaintiffs, would have felt compelled to resign.

140.    As a direct and proximate consequence of the Defendants' intentional, unlawful, discriminatory, and retaliatory treatment, which led to the constructive discharge of the Plaintiffs,

the Plaintiffs have suffered and continue to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

141.    By reason of the retaliation perpetrated by Defendants, the Plaintiffs are entitled to all damages available to them under New York State Human Rights Law.

## TENTH CAUSE OF ACTION

### New York City Human Rights Law – Constructive Discharge

142.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

143.    Plaintiffs were constructively discharged based on their sex when they were subjected to the Defendants sexual harassment / hostile working environment and retaliation, despite the Defendants' knowledge about such unlawful behavior, in violation of New York City Administrative Code § 8-107 *et seq.*

144.    The working conditions resulting from the Defendants' sexual harassment / hostile working environment and retaliation were so intolerable that a reasonable person in the respective employee's situation, such as the Plaintiffs, would have felt compelled to resign.

145.    As a direct and proximate consequence of the Defendants' intentional, unlawful, discriminatory, and retaliatory treatment, which led to the constructive discharge of the Plaintiffs, the Plaintiffs have suffered and continue to suffer damages, including, but not limited to, compensatory damages due to emotional distress and mental anguish.

146.    By reason of the retaliation perpetrated by Defendants, the Plaintiffs are entitled to all damages available to them under New York City Human Rights Law.

## ELEVENTH CAUSE OF ACTION

147.    Plaintiffs repeat and reiterates each and every allegation above as though fully set forth herein.

148.    Defendants did place Plaintiffs in fear of imminent and harmful contact by engaging aggressive acts of verbal castigation, the making of threatening and hostile gestures, unwanted sexual advances, and coerced and unwelcomed physical contact.

149.    As a result of the assaults and batteries alleged herein, Plaintiffs sustained physical and emotional damages.

150.    By reason of the retaliation perpetrated by Defendants, the Plaintiffs are entitled to all damages available to them under New York State Law.

## PRAYER FOR RELIEF

**WHEREFORE**, upon all of the facts, allegations, and causes of action as set forth and alleged herein, Plaintiffs respectfully request that this Court:

A.    Grant judgment against Defendants as to each and every cause of action herein alleged;

B.    Grant judgment declaring that the actions and practices of Defendants violated the Plaintiffs' civil rights under each cause of action alleged herein and enjoining such violations;

C.    Grant an order awarding Plaintiffs damages in an amount to be determined at trial, together with interest and the costs and disbursements of this action, plus reasonable attorneys' fees, punitive damages sufficient to punish and deter the continuation of Defendants' unlawful employment practices, as well as any other damages permitted to be recovered by law pursuant to the above causes of action; and

D.    Grant any such further relief as the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated:  April 22, 2020
      Garden City, New York

                                    GERSTMAN SCHWARTZ LLP

                                    By: _____
                                    Randy E. Kleinman, Esq.
                                    Bradley L. Gerstman, Esq.
                                    1399 Franklin Avenue, Suite 200
                                    Garden City, New York 11530
                                    Tel. No.: (516) 880 – 8170

                                    *Counsel for Plaintiffs*