UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CRYSTAL ARBOUIN,

                              Plaintiff,

      -against-

BOB'S DISCOUNT FURNITURE, LLC, BEN
PILLAI, and RALPH BRIGHAM,

                           Defendants.

------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
20-cv-1893 (SJF)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this employment discrimination litigation, on referral from the Honorable Sandra J. Feuerstein for Report and Recommendation, is Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. *See* DE [21]. By way of Complaint dated April 23, 2020, later modified by an Amended Complaint dated August 28, 2020, Plaintiff Crystal Arbouin ("Plaintiff" or "Arbouin") brings this action against Bob's Discount Furniture, LLC ("Bob's"), Ben Pillai ("Pillai") and Ralph Brigham (collectively, "Defendants"), alleging violations of:  (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (ii) New York State Executive Law § 296 *et seq.* ("NYS Human Rights Law" or the "NYSHRL"); as well as state law claims for (iii) negligent hiring,

supervision and retention, and (iv) assault and battery.  *See* Complaint ("Compl."), Docket Entry ("DE") [1]; Amended Complaint ("Am. Compl."), DE [9].[1]

For the reasons set forth herein, the Court respectfully recommends granting in part and denying in part Defendants' motion.

## I. BACKGROUND

Unless otherwise indicated, the facts set forth herein are taken from the Complaint and Amended Complaint and are accepted as true for purposes of the instant motion.

### A.   Relevant Facts

Arbouin, a New York resident, who is female, was employed by Bob's beginning on or about October 16, 2018.  *See* Am. Compl. ¶¶ 8-9; Compl. ¶ 22.[2]  Bob's is a limited liability company organized under Massachusetts law with its principal place of business in New York, and operates 121 stores in 18 states.  *See* Am. Compl. ¶¶ 10-12.  Pillai is a Bob's employee who supervised Plaintiff, and Brigham is a former Bob's employee who Arbouin maintains was personally involved in day-to-day employment decisions where she worked.  *See id.* ¶¶ 13-16.

---

[1] As recognized in footnote 3, Defendants' counsel does not represent Brigham.  While the Amended Complaint does not explicitly denote which claims are made against which specific defendant(s), it appears that each of Arbouin's causes of action apply to all Defendants, except for her Negligent Hiring, Supervision, and Retention claim, which alleges that "Defendants knew, or should have known, of Brigham's propensity for the [] conduct that caused [Plaintiff's] injuries," and is likely asserted only against Bob's and Pillai.  Further, all arguments on the motion to dismiss appear to apply equally to all Defendants.  As a result, the Court treats the motion accordingly.

[2] It remains unclear whether Arbouin is still an employee at Bob's.  Plaintiff claims for the first time in opposition that Bob's terminated her employment, as well as that she is currently furloughed.  *See* Plaintiff's Memorandum of Law in Opposition to Bob's Discount Furniture, LLC's and Ben Pillai's Motion to Dismiss Plaintiff's First Amended Complaint ("Pl. Opp."), DE [22], 15, 19-20.  The Complaint and Amended Complaint, however, are silent on this issue.

Brigham began working as a sales associate at Bob's Farmingdale branch in or around November 2018. *See id.* ¶ 20; Compl. ¶ 32. Shortly thereafter, Plaintiff alleges, Brigham commenced a pattern of sexual harassment directed at her and several other female employees. *See* Am. Compl. ¶ 20. Arbouin points to a specific instance in which Brigham told her he wanted to "choke her during sex," after which she attempted to avoid him. *See id.* ¶ 21. Plaintiff further maintains that in or around January 2019, Brigham "caressed and groped [her] buttocks" for several seconds, while saying "oh yeah!" within visual proximity of multiple security cameras. *See id.* ¶ 22.

Plaintiff alleges that her efforts to steer clear of Brigham resulted in his jealousy and anger, particularly with respect to other male coworkers she spoke to. *See id.* ¶¶ 23-24. For example, Arbouin claims that Brigham told her to stay away from one male coworker, and subsequently incited a verbal confrontation when he yelled at the two of them to stop speaking to each other. *See id.* ¶ 24. On another occasion, Plaintiff maintains, Brigham approached her on the sales floor and asked, "[y]ou just going to . . . talk to [male coworker, Roger] all day?" *Id.* Finally, Arbouin alleges that Brigham called her an "idiot" and a "kid," asked her "what would you know about a career, you'll never have one," called her a "ghetto queen" and told her she would never own a home. *See id.*

Arbouin claims that another female employee, Fiordaliza Tineo ("Tineo") first informed Bob's of Brigham's pattern of sexual harassment in November 2018 when she reported his conduct to Pillai, the store's manager, after Brigham commented on

her body and made sexual suggestions toward her. *See id.* ¶¶ 20, 25. Plaintiff further alleges that Pillai deliberately concealed Tineo's complaints from Bob's Human Resources ("HR") department, along with Arbouin's and a third female employee, Laura Lorenzo's ("Lorenzo") reports regarding Brigham's conduct made in January and March 2019. *See id.* ¶ 25. Specifically, Lorenzo complained that Brigham made sexual remarks toward her, his subordinate, including descriptions of his genitals and of sexual acts he allegedly fantasized about performing with her. *See id.* ¶ 22.

Plaintiff states that Pillai actively hindered Bob's ability to investigate the allegations lodged against Brigham by, *inter alia*, discarding the video recording of Brigham inappropriately touching Arbouin. *See id.* ¶ 25. Arbouin maintains that Pillai responded to her complaints regarding Brigham "with hostility and retaliatory conduct, publicly accusing [] Arbouin and [] Lorenzo of being liars on multiple occasions and punishing them in various ways throughout the workday," thereby contributing to a hostile work environment, aiding and abetting Brigham's conduct, and retaliating against Plaintiff and the others who filed reports. *See id.*

After informing Bob's HR of Brigham's conduct again in March 2019, Plaintiff argues that the department "likewise responded with hostility and did nothing to stop the subsequent onslaught of retaliatory conduct perpetrated by Mr. Pillai." *See id.* ¶ 26. Specifically, Arbouin alleges that she was penalized for failing to meet certain sales goals for Bob's "Goof" insurance by 0.2 percent, despite the fact that she was within Bob's grace period provided to new employees like her at the time. *See id.* ¶ 27. In another instance, after Bob's granted Plaintiff's request to use her paid time

off for a "mental health" vacation "to help cope with the trauma and anxiety caused by [] Brigham's sexual assault and harassment," Pillai later rescinded approval for her vacation. *See id.* ¶ 28. Arbouin claims that Bob's did not terminate Brigham's employment until she retained counsel in July 2019. *See id.* ¶ 29.

**B.    Procedural History**

Based on the above, Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 5, 2019. *See id.* ¶ 5. The EEOC issued a right to sue letter dated January 31, 2020, which Arbouin received on February 4, 2020. *See id.* ¶ 6.

Plaintiff commenced this action on April 23, 2020, along with Lorenzo as co-plaintiff, against Bob's, Brigham, and three Bob's supervisors. *See generally* Compl. The Complaint sought declaratory relief and damages, and alleged eleven causes of action: (i) sexual harassment in violation of Title VII; (ii) sexual harassment in violation of the NYS Human Rights Law; (iii) sexual harassment in violation of New York City Administrative Code § 8-107 ("NYC Human Rights Law"); (iv) retaliation in violation of Title VII; (v) retaliation in violation of the NYS Human Rights Law; (vi) retaliation in violation of the NYC Human Rights Law; (vii) negligent hiring, supervision and retention; (viii) wrongful termination, by way of constructive discharge, in violation of Title VII; (ix) constructive discharge in violation of the NYS Human Rights Law; (x) constructive discharge in violation of the NYC Human Rights Law; and (xi) assault and battery.

On August 28, 2020, Arbouin filed an Amended Complaint, as the sole plaintiff, against Bob's, Pillai and Brigham.  The Amended Complaint also seeks declaratory relief and damages and alleges the same causes of action except for those under the NYC Human Rights Law, which have been withdrawn.  *See generally* Am. Compl. On December 10, 2020, Defendants moved to dismiss the Amended Complaint on the grounds that it fails to state a claim upon which relief can be granted.  *See* Memorandum of Law in Support of Bob's Discount Furniture, LLC and Ben Pillai's Motion to Dismiss Plaintiff's Amended Complaint ("Def. Mem."), DE [21-2].[3]  Plaintiff opposes the motion.  *See* Pl. Opp.

## II.  LEGAL STANDARDS

Defendants move to dismiss for failure to state a cause of action, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6).  To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, 127 S. Ct. at 1949.  In deciding a motion to dismiss, "a court must 'accept all

---

[3] Defendants maintain that there is no evidence that Brigham was properly served with notice of the Amended Complaint, and that Defendants' counsel does not represent him.  *See* Def. Mem. at 1 n.1. The Court notes that the docket reflects that service was effectuated upon Brigham on November 7, 2020.  *See* DE [18], [19].  Nevertheless, as set forth above, because all of the arguments set forth in the motion apply with equal force to all Defendants, the Court treats them accordingly.

allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)).

## III. DISCUSSION

Applying these standards, and for the reasons set forth below, the Court respectfully recommends granting in part and denying in part Defendants' motion to dismiss.

### A. Discrimination in Violation of Title VII and the New York State Human Rights Law

Arbouin asserts claims for discrimination under Title VII and the NYSHRL based on her alleged constructive discharge. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [the] . . . terms, conditions, or privileges of employment, because of such individual's . . . sex. . . ." 42 U.S.C. § 2000e–2(a)(1). Similarly, Section 296(1) of the NYSHRL renders it unlawful "[f]or an employer . . . because of an individual's . . . sex . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Courts use the same standard when analyzing Title VII and NYSHRL discrimination claims. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003).

The Supreme Court set forth the elements that a plaintiff must establish to make out a prima facie case under Title VII in *McDonnell Douglas v. Green*, 411 U.S.

792, 93 S.Ct. 1817 (1973).  Under this framework, a plaintiff must show that:  (1) she was within a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *Id.* at 802, 93 S.Ct. at 1825; *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009).  Such a showing raises a temporary "presumption" of discriminatory animus, shifting the burden of production to the employer and requiring the employer to come forward with its lawful justification for the adverse employment action. *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).  If the defendant meets this burden, the burden shifts back to the plaintiff to show that the proffered reason was not the true reason, or in any event not the sole reason, for the employment decision, which merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against her.  *See id.* at 307-08.

At the pleading stage, however, courts do not apply the *McDonnell Douglas* burden shifting test to analyze the evidentiary support for Title VII claims, but "consider only whether the complaint includes factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *Gonzalez v. Carestream Health, Inc.*, 520 Fed.Appx. 8, 9–10 (2d Cir. 2013) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965); *Figueroa v. RSquared NY, Inc.*, 89 F.Supp.3d 484, 489 (E.D.N.Y. 2015); *Fanelli v. New York*, 51 F.Supp.3d 219, 231 (E.D.N.Y. 2014); *Friel v. Cty. of Nassau*, 947 F.Supp.2d 239, 251 (E.D.N.Y. 2013).  "In other words, the Court asks only whether a plaintiff has pled a prima facie case, not whether a plaintiff has established that case.

Thus, the standard is simply whether the plaintiff's complaint, construed liberally, satisfies the federal pleading requirements for a claim of discrimination." *Figueroa*, 89 F.Supp.3d at 489 (internal quotations and citations omitted); *Fanelli*, 51 F.Supp.3d at 231; *Friel*, 947 F.Supp.2d at 251; *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("Plaintiffs need only comply with Rule 8(a)(2) by providing a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of age discrimination and the grounds upon which those claims rest.").

Applying these standards, Plaintiff's discrimination claim fails because she has not sufficiently alleged that she was subject to an adverse employment action. Arbouin argues that she satisfies the adverse employment action element because she was constructively discharged.

A constructive discharge constitutes an adverse employment action. *See Fitzgerald v. Henderson*, 251 F.3d 345, 357-58 (2d Cir. 2001) ("Adverse employment actions" for purposes of showing Title VII discrimination claim include discharge from employment, meaning either actual termination of employment by the employer or constructive discharge); *Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 478 (S.D.N.Y. 2019) ("[A] constructive discharge constitutes an adverse employment action" for purposes of a NYSHRL discrimination claim). "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223

F.3d 62, 73 (2d Cir. 2000) (internal quotations and citations omitted); *see also Dowrich-Wks. v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 12–13 (2d Cir. 2013). "[A] constructive discharge cannot be proven merely by evidence that an employee disagreed with the employer's criticisms of the quality of her work, or did not receive a raise, or preferred not to continue working for that employer. Nor is the test merely whether the employee's working conditions were difficult or unpleasant." *Spence v. Md. Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993). Rather, a plaintiff must establish that her employer made work "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 161 (2d Cir. 1998) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (internal alteration omitted)); *see also Dowrich-Wks.*, 535 F. App'x at 12-13; *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003) (An employee is constructively discharged when an employer, rather than discharging the employee directly, "intentionally creates a work atmosphere so intolerable" that the employee is "forced to quit involuntarily."). In this regard, "[r]esignation is the sine qua non of a constructive discharge claim." *Brescia v. LTF Club Mgmt. Co., LLC*, No. 18-CV-08715, 2020 WL 137311, at *6 (S.D.N.Y. Jan. 9, 2020); *see also Guzman v. Macy's Retail Holdings, Inc.*, No. 09 Civ. 4472, 2010 WL 1222044, at *7 (S.D.N.Y. Mar. 29, 2010) (citing *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 493 (S.D.N.Y. 2000)) (dismissing constructive discharge claim where plaintiff had not asserted that she resigned from her employment). The analysis as to Plaintiff's claim for

constructive discharge under the NYSHRL is the same. *See Pryor v. Jaffe & Asher*, LLP, 992 F. Supp. 2d 252, 256–57 (S.D.N.Y. 2014).

Applying these standards, Arbouin's discriminatory discharge claim fails. Plaintiff's Amended Complaint fails to allege that she resigned, or that Bob's otherwise terminated her employment. In fact, Plaintiff makes no mention of her employment status in her Amended Complaint and asserts only in her opposition that she was alternately furloughed or terminated in July 2020. *See* Pl. Opp. at 15, 19-20. Raising those claims for the first time in her opposition, however, does not save Arbouin's deficient pleading. *See, e.g.*, *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F.Supp.2d 197, 209 n.8 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss."). Accordingly, the Court respectfully recommends that Defendants' motion to dismiss Plaintiff's causes of action for unlawful discriminatory constructive discharge, under Title VII and the NYSHRL be granted, without prejudice, to the extent Plaintiff is able to allege constructive or actual discharge in a Second Amended Complaint.

## B.   Sexual Harassment in Violation of Title VII and the New York State Human Rights Law

Plaintiff also asserts causes of action for sexual harassment under Title VII and the NYSHRL, claiming that Defendants discriminated against her by creating and maintaining a hostile work environment.

i.    *Title VII Hostile Work Environment*

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct:  (1) 'is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'"  *Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)).  "[A] plaintiff need not prove all of these elements at the pleading stage."  *Falcon v. City Univ. of New York*, 263 F.Supp.3d 416, 430 (E.D.N.Y. 2017).  "Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"  *Patane*, 508 F.3d at 113 (quoting *Terry*, 336 F.3d at 148).  The Second Circuit has "repeatedly cautioned against setting the bar too high" for defeating a motion to dismiss in the sexual harassment context.  *Id.* (internal quotations and citation omitted).

To show that conduct was objectively severe or pervasive, a plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [her] working environment."  *Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 387 (E.D.N.Y. 2018); *see Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *Cruz v. Coach Stores*, Inc., 202 F.3d 560, 570 (2d Cir. 2000).  In making a determination as

to the objective severity or pervasiveness of challenged conduct, courts consider "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance,'" as well as what psychological harm, if any, resulted. *See Littlejohn*, 795 F.3d at 321 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993)); *Pryor*, 992 F. Supp. 2d at 256–57.  The Title VII cause of action applies only to Bob's, as there is no individual liability under the statute. *See, e.g.*, *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("[W]e note that individuals are not subject to liability under Title VII.") (internal quotations and citations omitted).

Applying these standards, the Court concludes that Plaintiff states a Title VII claim for hostile work environment against Bob's.  Arbouin alleges that Brigham, who was involved in day-to-day decision making with respect to employment, touched her inappropriately, made sexual remarks toward her and verbally castigated her, and provides specific examples to support her claim of repeated and pervasive activity. Viewed in conjunction with his verbal attacks regarding her communications with other male coworkers, the totality of the allegations adequately pleads a claim for sexual harassment.

Defendants' argument that some of Brigham's comments are "non-sexual," and therefore cannot support her claim should be rejected. *See* Def. Mem. at 7. Specifically, Arbouin claims that Brigham told her to stay away from a male

coworker, yelled at the two of them to stop speaking to each other, and called her offensive names and told her she would never have a career or home.  Am. Compl. ¶ 24.  While these remarks in isolation may not be sufficient to establish discriminatory intent, they are relevant to establish a hostile work environment claim when viewed together with Plaintiff's allegations regarding Brigham's unwanted sexual gestures, advances, words and touches.  *See Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 722–23 (E.D.N.Y. 2015); *see also Patane*, 508 F.3d at 113 ("a work environment's hostility should be assessed based on the 'totality of the circumstances'") (citing *Harris*, 510 U.S. at 23, 114 S.Ct. at 371).  Accordingly, the Court recommends that Defendants' motion to dismiss be denied as to Arbouin's Title VII sexual harassment cause of action against Bob's.[4]

> ii.    *The New York State Human Rights Law Sexual Harassment*

"Sexual harassment claims brought under a hostile work environment theory under the NYSHRL are judged by the same standard as their federal counterparts in Title VII."  *McHenry v. Fox News Network, LLC*, 19 CIV. 11294 (PAE), 2020 WL 7480622, at *5 (S.D.N.Y. Dec. 18, 2020) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013)).  In this regard, the Court recognizes that in August 2019, the NYSHRL was amended to broaden its liability standards.  *See* N.Y. Exec. Law § 300.

---

[4] As set forth above, to the extent Arbouin's Title VII sexual harassment claims are directed to the individual Defendants, they should be dismissed.  *See Mandell*, 316 F.3d at 377; *Gutierrez v. Taxi Club Management, Inc.*, 17 CIV 532 AMDVMS, 2018 WL 3432786, at *4 (E.D.N.Y. June 25, 2018), *report and recommendation adopted sub nom. Gutierrez v. Taxi Club Mgmt., Inc.*, 17 CV 0532AMDVMS, 2018 WL 3429903 (E.D.N.Y. July 16, 2018).

The conduct alleged here, however, pre-dates the amendment, which does not have retroactive effect.  *See McHenry*, 2020 WL 7480622, at *8.

Though an individual defendant cannot be personally liable under Title VII, *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998), a supervisor may be liable under the NYSHRL if he "actually participates in the conduct giving rise to a discrimination claim," or if he aids or abets the allegedly unlawful conduct.  *Id.* at 1317; s*ee also Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (noting that individual liability exists under the NYSHRL if the individual "actually participates in the conduct giving rise to the discrimination," or aids and abets the unlawful conduct) (internal quotations and citation omitted)); *Pryor*, 992 F. Supp. 2d at 256–57 (S.D.N.Y. 2014).  Moreover, "[t]he Second Circuit has held that individual liability may be imposed under the NYSHRL on a co-worker who actually participates in the conduct giving rise to a discrimination claim, irrespective of whether that coworker possessed the authority to do more than carry out personnel decisions made by others."  *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 160 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also Tyson v. Town of Ramapo*, No. 17-CV-4990 (KMK), 2019 WL 1331913, at *18 (S.D.N.Y. Mar. 25, 2019) ("[A] defendant who *actually participates* in the conduct giving rise to a discrimination claim may be personally liable as an aider and abettor" under the NYSHRL) (emphasis in original).

The Court concludes that Plaintiff adequately alleges unlawful sexual harassment under the NYSHRL against all Defendants. Plaintiff sufficiently pleads that Brigham, as an individual personally involved in day-to-day employment decisions concerning Bob's, perpetuated the harassment directed toward her. Pillai, as her supervisor, contributed to and refused to address the sexually hostile environment impacting her employment. Specifically, Plaintiff maintains that Pillai discarded a video recording of Brigham's inappropriate conduct and called Arbouin a liar upon her filing a complaint. Accordingly, Plaintiff sufficiently alleges a claim against all Defendants, including Pillai and Brigham, based on their conduct. As a result, the Court respectfully recommends that Defendants' motion to dismiss be denied as to Plaintiff's cause of action for sexual harassment under the NYSHRL.

## C. Retaliation in Violation of Title VII and the New York State Human Rights Law

Arbouin further asserts claims that Defendants unlawfully retaliated against her in violation of Title VII and the NYSHRL for making complaints about sexual harassment. Defendants argue that these claims fail because Plaintiff has not adequately pled that she engaged in a protected activity or that she suffered an adverse employment action, and that even if she has, there is no causal connection between the two.

Title VII's anti-retaliation provision prohibits "discriminat[ion] against" an employee for "oppos[ing] any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e–3(a). Unlike the substantive anti-discrimination provision, which "seeks to prevent injury to individuals based on who they are, *i.e.*,

their status[,][t]he anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct." *Burlington Northern*, 548 U.S. 53, 63, 126 S.Ct. 2405, 2412 (2006).

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show:  (1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." *Equal Opportunity Emp. Comm'n v. United Health Programs of Am., Inc.*, 213 F. Supp. 3d 377, 423 (E.D.N.Y. 2016).  The NYSHRL similarly prohibits the discharge of employees in retaliation for their opposition to discriminatory practices.  N.Y. Exec. Law § 296(1)(e).  Just as in discrimination cases, courts apply the same analysis to retaliation claims under both statutes.  *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020).

>    *i.    Protected Activity*

"[A]ctivities protected under Title VII and [the NYSHRL] fall into two broad categories:  (1) opposing any practice made an unlawful employment practice by Title VII or the [NYSHRL] (an 'opposition claim') or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII or the [NYSHRL] (a 'participation claim')." *Kaible v. U.S. Computer Grp., Inc.*, 27 F.Supp.2d 373, 377 (E.D.N.Y. 1998).  Here, Arbouin asserts an opposition claim.

To be protected activity, "the plaintiff need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful" under the statute. *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (internal quotations and citations omitted); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). Moreover, the law is clear that informal complaints to management about discriminatory activity constitute "opposition" within the meaning of both statutes. *See, e.g., Littlejohn*, 795 F.3d at 318–19 (explaining that the "opposition clause protects such complaints to management and protests against discrimination") (internal quotations and citations omitted); *Cruz*, 202 F.3d at 566 ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as 'making complaints to management . . . and expressing support of co-workers who have filed formal charges.'" (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990))); *Falcon*, 263 F.Supp.3d at 428–29 ("The law also does not require that the employee file a formal complaint when opposing the discriminatory practices—an informal complaint is sufficient."); *Viscecchia v. Alrose Allegria LLC*, 117 F.Supp.3d 243, 256–57 (E.D.N.Y. 2015) ("There is no question that directly complaining to an employer about a discriminatory policy is sufficient to constitute 'protected activity' for purposes of his Title VII and [NYSHRL] retaliation claim."); *Martin v. State Univ. of N.Y.*, 704 F.Supp.2d 202, 227 (E.D.N.Y. 2010) ("It is clearly established that informal

complaints to supervisors constitute protected activity under Title VII.") (internal quotations and citations omitted).

Based on the facts alleged in the Amended Complaint, Plaintiff engaged in protected activity when she complained to Pillai and later to Bob's HR regarding Brigham's alleged sexual harassment and the purportedly sexually hostile work environment she was experiencing at the time. *See* Am. Compl. ¶¶ 25-26. Such complaints are sufficient to amount to protected activities.

ii. *Awareness of Participation in Protected Activity*

"As to the second element, implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini*, 136 F.3d at 292; *see also Soliman v. Deutsche Bank AG*, No. 03 Civ. 104, 2004 WL 1124689, at *13 (S.D.N.Y. May 20, 2004).

The allegations in the Amended Complaint, viewed as a whole, support the conclusion that Defendants knew about Plaintiff's complaints about Brigham's conduct. Arbouin alleges that she explicitly complained to both Pillai and HR. She further maintains that Pillai and HR responded to those complaints with hostility by, *inter alia*, calling her a liar. *See* Am. Compl. ¶¶ 25-26. Accordingly, taking the allegations in the Amended Complaint at face value, Defendants knew of Arbouin's protected activity.

19

### iii.   Adverse Employment Action

Courts in the Second Circuit have taken a "generous" view of retaliatory acts at the motion to dismiss stage. *See Ingrassia*, 130 F. Supp. 3d at 723-24 (noting "it is appropriate to construe Title VII's prohibition on retaliation generously"). Therefore, "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination' may constitute retaliation." *La Grande v. DeCrescente Distributing Co., Inc.*, 370 Fed.Appx. 206, 212 (2d Cir. 2010) (quoting *Burlington N.*, 548 U.S. at 57, 126 S.Ct. at 2409. The Second Circuit has stated, with respect to retaliation claims, that "[o]nly a statement of facts so conclusory that it fails to give notice of the basic events and circumstances on which a plaintiff relies should be rejected as legally insufficient under 12(b)(6)." *Patane*, 508 F.3d at 116 (finding plaintiff's Title VII retaliation claim sufficient to survive defendant's motion to dismiss).

The Court acknowledges Defendants' argument that Plaintiff largely cites to conclusory "hostility and retaliatory conduct" as a result of her complaints. *See* Am. Compl. ¶¶ 25-26; Def. Mem. at 9-11. Nevertheless, Plaintiff also alleges several specific examples of conduct that could dissuade a reasonable worker from making or supporting a charge of discrimination, namely that Pillai "publicly" called her a liar, that Bob's penalized her for failure to meet a sales goal even though she was still within a grace period afforded to new employees, and that Bob's rescinded its approval of her vacation. *See* Am. Compl. ¶¶ 25-28. Viewed in conjunction with the temporal proximity of these actions, discussed below, the Court concludes that

Plaintiff sufficiently pleads facts that establish that a reasonable worker may be dissuaded from making or supporting a charge of discrimination based on Bob's retaliatory conduct, as well as Pillai's aiding and abetting through his own retaliatory actions. As to Brigham, while Arbouin also brings her NYSHRL retaliation cause of action against him as an aider and abettor, her claim fails in that respect because the Amended Complaint is devoid of any factual allegations regarding Brigham's behavior, retaliatory or otherwise, after she complained of his harassment.

### iv. Causation

As to causation, "a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). Under Title VII, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Farmer*, 473 F. Supp. 3d at 332–33 (internal citations omitted). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action; instead, it requires only that absent the retaliatory motive, the adverse action would not have occurred." *Id.*

The Second Circuit has not yet conclusively resolved whether the but-for causation standard applies to claims under the NYSHRL, as it does under Title VII. *See Holcomb v. State Univ. of N.Y. at Fredonia*, 698 F. App'x 30, 31 (2d Cir. 2017); *Kleehammer v. Monroe County*, 583 F. App'x 18, 21 (2d Cir. 2014); *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 847 n.7 (2d Cir. 2013); *Farmer*, 473 F. Supp. 3d at

332-33 n.7.  On several occasions, however, the Circuit has implicitly applied the but-for standard to NYSHRL claims.  *See Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14–16 (2d Cir. 2018) (affirming grant of summary judgment for defendant on Title VII and NYSHRL retaliation claims where plaintiff failed to raise genuine issue of material fact as to but-for causation); *Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 14 (2d Cir. 2018) (explaining but-for causation where retaliation claim brought only under NYSHRL); *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 7 (2d Cir. 2017) (finding that "the record lack[ed] sufficient support for [plaintiff's] argument under the but-for causation standard of . . . NYSHRL").  District courts in this Circuit have also applied the but-for standard to NYSHRL claims.  *See, e.g., Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 288-89 (S.D.N.Y. 2020) (analyzing a motion to dismiss plaintiff's NYSHRL retaliation claim under but-for causation standard); *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 n.22 (S.D.N.Y. 2020) (collecting cases).  Similarly, the New York Court of Appeals has not yet resolved this issue of New York law.  Regardless, because the Amended Complaint pleads sufficient facts to satisfy but-for causation, as set forth below, it necessarily would also satisfy any lower standard.  *See Holcomb*, 698 F. App'x at 31.

"A causal connection in retaliation claims can be shown either:  '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"  *Littlejohn*, 795

F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). The Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). The inquiry is dependent on the circumstances of the case. *Conforti v. Sunbelt Rentals, Inc.*, 201 F.Supp.3d 278, 302 (E.D.N.Y. 2016).

Here, the circumstances create a plausible inference of a causal nexus due to the close temporal proximity, at most two months, between when Plaintiff engaged in the protected activity and the purported retaliatory conduct. *See* Am. Compl. ¶¶ 25-28. Accordingly, the Court finds that Plaintiff adequately states a claim for retaliation against Bob's and Pillai, and respectfully recommends that Defendants' motion to dismiss Arbouin's causes of action for Title VII and NYSHRL retaliation be denied as against those two defendants. *See, e.g., Vega*, 801 F.3d at 92 (three months); *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217–18 (2d Cir. 2001) (twenty days); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (twelve days); *Ulrich v. Soft Drink, Brewery Workers & Delivery Emps., Indus. Emps., Warehousemen, Helpers & Miscellaneous Workers, Greater New York & Vicinity, Loc. Union No. 812*, 425 F. Supp. 3d 234, 241 (S.D.N.Y. 2019) (just over two months); *Conforti*, 201 F.Supp.3d at 303–04 (two months); *Reynoso v. All Foods, Inc.*, 908 F.Supp.2d 330, 342 (E.D.N.Y. 2012) (one month).[5] As noted above, Arbouin fails to

---

[5] Again, the Title VII retaliation claim can survive only against Bob's, as there is no Title VII liability as to individual defendants. *See Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 87 (E.D.N.Y. 2020).

plead facts that Brigham took any adverse action against her subsequent to her complaints regarding his alleged harassment.  Accordingly, the Court recommends that Plaintiff's NYSHRL claim be dismissed as against Brigham without prejudice, to the extent she is able to allege retaliatory conduct on the part of Brigham in a Second Amended Complaint.

### D.    Negligent Hiring, Supervision and Retention

Arbouin further alleges that Defendants Bob's and Pillai negligently hired and supervised Brigham.  Defendants argue that this claim should be dismissed because the New York Workers' Compensation Law provides the exclusive remedy for negligence claims against employers, *see* N.Y. Workers' Comp. Law § 29(6), and, alternatively, that Plaintiff fails to adequately allege that Defendants knew or should have known of Brigham's alleged propensities.

The New York Workers' Compensation Law Section 29(6) provides in pertinent part:

> The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee . . . when such employee is injured or killed by the negligence or wrong of another in the same employ. . . .  The limitation of liability of an employer . . . for the injury or death of an employee shall be applicable to another in the same employ. . . .

N.Y. Workers' Comp. Law § 29(6).

Under New York law, common law negligence claims are "precluded by New York Workers' Compensation Law, which provides the exclusive remedy for negligence claims against an employer." *Kelly v. N. Shore–Long Island Health Sys.*, 13–CV–1284, 2014 WL 2863020, at *11 (E.D.N.Y. Jun. 22, 2014) (internal quotation

24

marks and citations omitted); *see also* N.Y. Workers' Comp. Law § 29(6).  Indeed, "[t]he Second Circuit has affirmed dismissals by district courts of negligent supervision, hiring, and retention claims on [the] basis [of the New York Workers' Compensation Law]." *Gomez v. N. Shore Long Island Jewish Health Sys.*, 13–CV–2394, 2014 WL 4373315, at *4 (E.D.N.Y. Sept. 2, 2014) (citing *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 137–38 (2d Cir. 2001) and *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997)).  Accordingly, Plaintiff's state law negligence claims must be dismissed because they are barred by New York Workers' Compensation Law.

In this regard, Plaintiff's allegations of gross negligence are insufficient to save her claim.  As New York courts have recognized, although "[t]here is an exception to the exclusivity of the Workers' Compensation Law 'where injury is sustained to an employee due to an intentional tort perpetrated by the employer or at the employer's direction,'" Plaintiff must show that the employer's acts were "directed at causing harm to the particular employee." *Acevedo v. Con. Edison Co. of N.Y.*, 189 A.D.2d 497, 500–01, 596 N.Y.S.2d 68, 70–71 (1st Dep't 1993) (citation omitted) ("'A mere knowledge and appreciation of a risk is not the same as the intent to cause injury. . . .'"), *appeal dismissed*, 82 N.Y.2d 748, 602 N.Y.S.2d 806 (1993).  Allegations of gross negligence or recklessness are insufficient to establish an intentional tort so as to circumvent the Workers' Compensation Law. *Lauria v. Donahue*, 438 F.Supp.2d 131, 142 (E.D.N.Y. 2006).

Accordingly, the Court respectfully recommends that Defendants' motion to dismiss Plaintiff's cause of action for negligent hiring, supervision and retention be granted.

### E.    <u>Assault and Battery</u>

Plaintiff's final cause of action is for assault and battery, which Defendants argue is time-barred.

In New York, claims of assault and battery have a one-year statute of limitations that runs from the date of each alleged act. *See* N.Y. C.P.L.R. § 215(3) ("The following actions shall be commenced within one year[:] . . . an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, or a violation of the right of privacy under section fifty-one of the civil rights law[ ]. . . ."); *Ferran v. Williams*, 194 A.D.2d 962, 963, 598 N.Y.S.2d 866, 868 (3d Dep't 1993).

Plaintiff's assault and battery claim is based on the allegation that Brigham groped her in or around January 2019. As she filed her complaint in April 2020, her assault and battery cause of action based on this conduct is precluded. Accordingly, the Court respectfully recommends that Defendants' motion to dismiss Plaintiff's assault and battery claim be granted.

## IV.  CONCLUSION

For the reasons stated above, the Court respectfully recommends that Defendants' motion to dismiss be granted in part and denied in part. Specifically, the Court recommends:  (1) granting Defendants' motion with respect to Arbouin's causes

of action for negligent hiring, supervision and retention and assault and battery with prejudice; (2) granting Defendants' motion as to Plaintiff's discrimination claim and NYSHRL retaliation claim, against Brigham, without prejudice; and (3) denying Defendants' motion as to her other claims.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days.   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            June 30, 2021

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge